KENNARD v. YAZOO & M. V. R. CO.

No. 2005.

Court of Appeal of Louisiana.
First Circuit.

June 30, 1939.

W. A. Benton, of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellee.

OTT, Judge. .

Plaintiff alleges that he was injured on May 19, 1937, when the door of a box-car belonging to the defendant railroad fell on him, causing a comminuted fracture of the tibia and fibula of his right leg, together with other injuries which he sets out in his petition. He alleges that the track or rail on which this door was rolled when opened and closed was crooked or out of line and the flanges on the rollers were worn smooth, thereby causing the rollers to leave the rail and causing the door to fall on him as he attempted to open it. He further alleges that at the time of his injury he was employed by and working for the Solvay Process Company, and the box-car in which was the defective door causing the injury was placed or spotted for his employer.

Plaintiff alleges that he has received compensation from his employer since the injury on account of permanent total disability at the rate of 65% of his weekly wages of $30, or a total of about fourteen hundred dollars up to the time of filing the suit; that he should receive further compensation at the same rate during his disability, not to exceed four hundred weeks, and that his employer is entitled to be reimbursed the amount of compensation paid and to be paid by it out of any sums recovered by him against the defendant railroad company. He asks that his employer be made a party to the suit, and that he have judgment against the railroad company for the sum of $50,915.40, with a reimbursement to the Solvay Process Company the amount of compensation paid and to be paid by it as aforesaid.

This suit was not filed until October 28, 1938, more than a year after the accident and injury, and apparently in an effort to forestall a plea of prescription and show a suspension or interruption of prescription, the plaintiff made the following allegation in his petition: "That the said defendant, the Yazoo & Mississippi Valley Railroad Company, through its authorized agent, has repeatedly admitted and acknowledged its liability for said accident and injuries and has oftentimes said that as soon as petitioner was able to furnish said defendant with a discharge from his doctor it would be ready and willing to adjust his claim, the last time the said defendant acknowledged and confessed its liability being on June 10, 1938."

The defendant railroad company filed a plea of one year prescription which plea was sustained on the face of the petition. Plaintiff has appealed from the judgment which dismissed his suit.

Among the actions which prescribe in one year under Article 3536 of the Civil Code are those "for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses." In the next article of the Code this prescription is

said to begin to run in the following rather inartistic and ungrammatical language: "And in the other cases from that on which the injurious words, disturbance or damage were sustained." Put in a little different language, this part of Art. 3537 of the Civil Code means that prescription begins to run against those actions mentioned in that part of the preceding article which we have quoted from the day on which the injurious words were spoken or published, when the disturbance was caused or the damage sustained.

■■ As the petition alleges that plaintiff sustained his damage on May 19, 1937, prescription began to run against his action on that date. Unless the allegation in his petition which we have quoted above shows a suspension or an interruption of the running of prescription, it is obvious that the action was prescribed when the suit was filed. It is too well established to require the citation of authority that where the petition shows on its face that the claim is prescribed, it is incumbent on the plaintiff to allege and prove facts sufficient to show a suspension or an interruption of the running of prescription so as to bring the action within the prescription period.

A careful reading of the quoted part of the petition shows that an attempt is made to combine two facts as a basis for the suspension or interruption of prescription —one to show an acknowledgement of the liability and the other to show acts on the part of the defendant calculated to mislead and lull plaintiff into a feeling of safety, thereby causing him to post-pone action on his claim.

■■ Article 3520 of the Civil Code provides that prescription ceases to run whenever the debtor makes acknowledgement of the right of the person whose title they prescribe. The liberative prescription, that which operates a release of debts, discharges the debtor by the mere silence and inaction of the creditor during the time fixed by law. In order for the running of this liberative prescription to cease because of an acknowledgement of the debt on the part of the debtor, the acknowledgement must be of a specific debt, and must be couched in clear and certain terms. Reconstruction Finance Corporation v. Thomson Gin Co., Inc., et al, La. App., 168 So. 715; Chalkey v. Pellerin, La. App., 186 So. 382.

■■ Granting to the allegations of the petition a liberal construction, and assuming that these allegations justify a conclusion that the defendant admitted and acknowledged its liability for the accident and injury during the one year prescriptive period, there was no acknowledgement of any specific amount or debt. A debtor cannot acknowledge a debt so as to stop the running of prescription against it without knowing what amount he is acknowledging. It is not alleged, and it certainly cannot be assumed, that the defendant acknowledged a liability to the plaintiff in the sum of $50,915.40, the amount now claimed. So long as there was a dispute or uncertainty in the amount for which defendant was liable, if it acknowledged liability, there was cause for an action in court to determine that liability, and prescription did not cease to run against that action merely because plaintiff chose to remain silent and inactive.

In the case of Gibbons v. L. & N. R. Co., 3 La.App. 372, it is stated that the written acknowledgement of a claim by a carrier will interrupt prescription, but the acknowledgement in that case had reference to a stated and definite amount.

■ The other phase of the allegation which it is claimed shows a suspension or an interruption of prescription has reference to that part of the allegation which recites that the defendant oftentimes said (evidently meaning promised) that as soon as plaintiff was able to furnish defendant with a discharge from his doctor, it (the defendant) would be ready and willing to adjust his claim. It is not alleged when this discharge was to be furnished nor whether or not it has ever been furnished. But again giving a liberal construction to this allegation in the petition, and assuming that plaintiff has alleged and can prove that the defendant promised during the prescriptive period to adjust plaintiff's claim when he furnished a discharge from his doctor, was this such an act on the part of defendant as was calculated to mislead him, to conceal from him some material fact, or purposely to lull him into a false sense of security and cause him to post-pone filing his suit?

■ Counsel for plaintiff bases his argument for the interruption of prescription largely on the rule "Contra non valentem agere non currit prescriptio." This maxim means that prescription does not run against a person who is unable to act, and the rule is an exception to the rather hard and fast Codal provision to the effect

that mere silence and inaction on the part of a creditor for a certain time will cut off his right to enforce his claim in the courts. While the maxim of "Contra non valentem" is of common law origin, it has been adopted and applied in a somewhat limited and restricted sense in this State. The rule is a child of necessity brought into being to prevent the injustice of an innocent plaintiff being lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

Thus in the case of Hyman v. Hibernia Bank & Trust Company, 139 La. 411, 71 So. 598, the defendant bank and another company conspired to remove the goods of the latter company from the premises so as to deprive the plaintiff of his lessor's pledge thereon, and in pursuance of the conspiracy, the bank paid the rent as it matured and until the goods were removed and sold, all for the purpose of lulling plaintiff into a feeling of security, it was held that prescription did not begin to run against the claim until the last payment of rent was made by the bank.

The cases holding that prescription does not run against a claim which has been concealed by fraud until the creditor becomes aware of his claim are too numerous to cite. But there is no claim that the defendant in this case practised any fraud or deception on the plaintiff. About all that plaintiff claims or can claim in this respect is that he was led to believe that the defendant would adjust his claim when he furnished a discharge from his doctor, and that his failure to bring his action sooner was because of this promise on the part of defendant. It is argued that this act on the part of defendant was equivalent to a fraud and active concealment. However, it does not appear in what way plaintiff was misled or deceived as to any of his rights, nor does it appear that anything was put in the way of his asserting those rights during the prescriptive period. Defendant did nothing in the way of active machination to cause plaintiff to postpone filing his suit to enforce his claim before prescription accrued. The fact that defendant would not and did not adjust or pay his claim within the one year period should have been sufficient to cause plaintiff to assert his rights. Littlefield v.

City of Shreveport, 148 La. 693, 87 So. 714; Succession of Kretzer, La.App., 170 So. 906.

In the case of Warn v. Mexican Petroleum Corporation, 6 La.App. 55, suit was brought against a corporation by the parents of a boy who was killed while working for the corporation. Citation was served on the last day of the prescriptive period, and the defendant corporation filed an answer denying that the deceased had been killed while in its employ. A supplemental petition was filed after the prescriptive period had run setting up facts showing that the deceased was employed by a subsidiary corporation of the first defendant, and second defendant corporation filed a plea of prescription. The plea was overruled for the reason that it was shown that the first defendant corporation had led plaintiff to believe that their deceased son was in its employ when killed, and its insurance carrier had promised to settle with plaintiffs under the compensation law. Furthermore, it was held that, as one of the designated agents for the service of process of the parent corporation was also the secretary and treasurer of the local subsidiary corporation, the service of citation on this agent within the prescriptive period was sufficient to interrupt prescription against the latter corporation.

Counsel for plaintiff relies strongly on the case of Cruze v. Life Ins. Company of Virginia, La.App., 184 So. 735, and Id., La. App., 185 So. 492. In that case the beneficiary of three life policies sued to recover their face value long after prescription had run on the claims. The plaintiff was permitted to plead the doctrine of "contra non valentem" so as to suspend the running of prescription for the reason that the insurance company had failed to place in the policies a provision that after three full premiums have been paid the policies would not lapse but be extended for their full face value for such time as the reserve on said policies would extend them. The statute requires that the policy contain a stipulation that it is issued subject to this non-forfeiture provision.

The court held that the failure of the insurance company to insert in the policies a provision that they were written in accordance with the statute had the legal effect of impeding plaintiff in obtaining knowledge of the existence of her rights. The law required the company to insert the provision in the policies for the informa-

tion and benefit of those who might have an interest in taking advantage of the extended insurance, and the omission by the company of a legal duty, even though not fraudulent, could not be taken advantage of in support of a plea of prescription.

The situation in the present case is quite different. No contention is made that the railroad company omitted any legal duty toward plaintiff that could have prevented him from ascertaining and enforcing his rights within the time the law has given him. For the whole year during which the courts were open to plaintiff to assert his claim, he had just as much knowledge of his right, or at least could have had, as he did on the day when he filed his suit. We think the trial judge was correct in sustaining the plea of prescription in this case.

For the reasons assigned, the judgment is affirmed at the cost of appellant.