254 So.2d 704 (1971)
Milton PERRODIN, as Curator of the Person and Estate of Francois Latiolais, Plaintiff-Appellant,
v.
Evestier Gene CLEMENT and Succession of Anna Sonnier Latiolais, Defendant-Appellee.
No. 3660.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1971.
Rehearing Denied December 14, 1971.
Writ Refused February 3, 1972.
*705 Edwards & Edwards, by Homer Barousse, Jr., Crowley, for plaintiff-appellant.
Olivier & Brinkhaus, by Armand J. Brinkhaus, Sunset, for defendant-appellee.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
In this case the district judge has written an excellent opinion which we adopt as our own:
"This is a suit by Milton Perrodin in his capacity as Curator of the Interdict, Francois Latiolais, to reduce an alleged excessive donation mortis causa made by Anna Sonnier Latiolais. The plaintiff has brought the action against Evestier Gene Clement alleging that the donation impinged upon the legitime of the interdict.
"On April 2, 1958, Anna Sonnier Latiolais executed a Last Will and Testament bequeathing all of her property to her son and only forced heir Francois Latiolais, born of the marriage between the decedent and her pre-deceased husband, Clodus Latiolais, and the usufruct to John and Rita Alleman. On August 30, 1960, Anna Sonnier Latiolais executed a codicil to that Last Will and Testament bequeathing the usufruct of her `present producing royalties' to her second husband, Evestier Gene Clement. In that codicil, the decedent also appointed him as executor of her entire estate and directed that he administer the property of her son, Francois Latiolais, who at that time had legal capacity.
"This suit prays in the alternative for a personal judgment against Evestier Gene Clement alleging gross neglect to effect a judicial interdiction of Francois Latiolais and for failure to exercise certain rights on his behalf.
"Defendant has filed an Exception of No Cause of Action and an Exception of Prescription as well as an answer to the pleadings.
"The exceptions were referred to the merits with all issues to be disposed of at one and the same time.
*706 "The Exception of Prescription is based upon LSA-C.C. art. 3542 which states, inter alia, that an action for the reduction of excessive donation is prescribed by 5 years. The testatrix died November 10, 1960 and her last will and testament was probated November 15, 1960. The present suit to reduce the donation was filed November 23, 1969. Thus, it seems apparent that the action has prescribed unless there has been a suspension or an interruption of the running of prescription. LSA-C.C. art. 3521 reads:
"`Prescription runs against all persons, unless they are included in some exception established by law.'
"The record does not reflect the date of birth of Francois Latiolais, although it is evident that he was approximately 48 years of age at the time of his mother's death. Direct examination of Mr. Milton Perrodin, his Curator, taken February 16, 1970, in this respect is as follows:
"`Q How old is Francois now, do you know?
A He is forty-eight.
Q Now,
A Fifty-eight, I mean.
Q Fifty-eight?
A Yes, I think.'
"Mr. Evestier Clement testified that when he first knew Francois his age was something like forty. He had married his mother 2½ years before her death. Mr. Francois, therefore, had reached the age of majority long before his mother's death in 1960. He had lived with his mother from birth until her death and then with Evestier Clement until about the year 1966 at which time he commenced residing with Milton Perrodin, his cousin. Shortly thereafter, on February 2, 1967, he was interdicted by judgment of the Twenty-seventh Judicial District Court, St. Landry Parish, Louisiana.
"Counsel for plaintiff argues that Francois Latiolais has been an incompetent since birth, although to the world he has not been legally incapacitated until the judicial pronouncement February 2, 1967. Counsel cites LSA-C.C. art. 402 which has to do with acts of an incompetent prior to the petition for interdiction. I do not believe that this article actually applies since we are not actually concerned with an act of Francois Latiolais which is sought to be annulled. However, the article does speak of the condition for interdiction being notorious prior to the interdiction, meaning that the cause of the interdiction was `generally known by the persons who saw and conversed with the party.' Mr. Evestier Clement stated that Francois had been sent to Pinecrest for treatment; that he could not read or write; that he acted as a child in that he `would have to mind him like a kid'; he could dress, feed, wash and shave himself; but he would not let him go places alone. Mr. Milton Perrodin, his first cousin, states that Francois was `just like about a two year old child. He was born like that. He stayed about the same. He don't get no worse or no better.'
"That Francois Latiolais was not considered entirely normal is also reflected by words of the Testatrix used in her last will and testament. She states, `Knowing, however, that my son, Francois, has a retarded mind and can not manage his own affairs * * *'. Also, in the codicil to her last will and testament she states, `Knowing however that my son, Francois is slowwitted and that he can not administer his own business * * *'.
"When considering that Francois was interdicted in 1967 and from the testimony of two living persons and the words used by the decedent, his mother, the cause for the interdiction most certainly must have existed prior thereto. The evidence convinces me of this fact. However his unfortunate condition may be termed makes no difference, the important thing is that he was not interdicted until 1967 and it is unimportant to wonder why.
*707 "Counsel for plaintiff contends that the date prescription began to run on the present action to reduce an excessive donation was the date of the interdiction since Francois was unable to bring the action to interrupt it. He urges the principle of `Contra non valentem agere non currit praescriptio' and contends that it should apply in the instant case. He strongly argues that the defendant in this suit, Evestier Clement, was named as Executor of the last will and testament of Anna Sonnier Latiolais and he should not be allowed to urge the Exception of Prescription at this time.
"The doctrine of `Contra non valentem agere non currit praescriptio', which is a suspension of prescription due to the inability of the party against whom it would ordinarily run to bring an action to interrupt it, was applied by the prerevoluntionary jurisprudence of France and continued after the adoption of the French Civil Code, which expressed an intention to wipe out this doctrine. However, when the disability was personal to an individual who is being prescribed against, such as feeblemindedness which has not been established by interdiction, it would not arrest the course of prescription. LSA-C.C. art. 3521, quoted above, is a literal translation of Article 2251 of the French Civil Code. The early jurisprudence of this state recognized that the maxim of `contra non valentem' was not inconsistent with the written laws of the State of Louisiana until the case of Smith v. Stewart, 21 La.Ann. 67 (1869) which abolished the doctrine of `contra non valentem' as being contrary to the express provisions of the Code.
"Later, in McKnight vs. Calhoun, 36 La. Ann. 408 (1884) the doctrine was reintroduced into our jurisprudence. Ultimately, in the landmark case of Cox v. Von Ahlfeldt [Ahlefeldt], 105 La. 543, 30 So. 175 (1900), the Supreme Court refused to suspend the prescription of an obligation while the creditor, although not under interdiction, was a hopeless imbecile, an expression consistent with the earlier French view. The history of the doctrine has been the subject of a most interesting comment in the Tulane Law Review of 1938 found in 12 Tulane Law Review, Page 244 et seq.
"The doctrine is still alive in our jurisprudence, and has been urged many times, although not always successfully.
"In the case of Hyman vs. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916), a case repeatedly cited by the Courts when considering similar questions, the Court applied the doctrine where the facts reflected that the defendants actively contributed to keep a plaintiff in ignorance and such ignorance was not due to lack of diligence on the part of the plaintiff. In this case Chief Justice Monroe also outlined the colorful and interesting history of this doctrine as it had developed in Louisiana.
"The Court in the case of Vance vs. Ellerbe, 150 La. 388, 90 So. 735 (1922) although not discussing the doctrine of `contra non valentem', considered prescription where a person was mentally incompetent and not interdicted and had this to say:
"`In these circumstances, we are forced to conclude that James W. Vance was committed to the state asylum in 1895 under the provisions of Section 1768 of the Revised Statutes, notwithstanding the use of the word "interdicted" in the order committing him; for the proceedings fits the requirements of that law, but in no wise complies with the provisions of the Civil Code relating to civil interdiction. The result is that he has never had the status of a person interdicted, so as to be protected by article 3522 of that Code. Cos [Cox] v. Von Ahlefeldt, 105 La. 543 et seq., 30 South. 175. The plea of prescription was therefore correctly sustained.'
"More recent cases have considered the doctrine of `contra non valentem'. In the case of Dufrene v. Tracy, 232 La. 286 [386], 94 So.2d 297 (1957), the Court disallowed the plea of prescription under LSA-C.C. articles 3542 and 2221, allowing a suspension where an attorney, an officer of the *708 court, was dealing with clients ignorant of legal procedure, stating that he owed them a duty but allowed 14 years to lapse without making any attempt to perform his obligation under a power of attorney agreement so could not claim the benefits of his own wrong. The Court, in commenting upon Hyman vs. Hibernia, supra, quoted:
"`For the negative it is said that the rule, "Contra non valentem agere no currit prescriptio," is not recognized in this state; and the case of Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, is cited. In that case the court recognized that this rule did apply to certain cases exceptional in their features. A further exception must be recognized, we think, in a case like the present, where the inability of the plaintiff to act was brought about by the practices of the defendants. Otherwise the defendants would be profiting by their own wronga thing inadmissible in law. * * *'
"In Aegis Insurance Co. v. Delta Fire & Casualty Co., 99 So.2d 767 ([La.App.] 1958) the Court used the doctrine of `contra non valentem' as an equitable estoppel in a case in which facts justified its application. In that case, prescription was suspended in a cause of action created by a wrongful act of a tort feasor because of active fraud and concealment of the whereabouts of property whether by tort feasor or another.
"In the case of Prather vs. Massey-Ferguson, Inc., 232 So.2d 80 (1970), the Third Circuit Court of Appeal applied the doctrine of `contra non valentem', relying heavily upon the case of Hyman v. Hibernia, supra, stating:
"`It would seem that a literal interpretation of the language of the Code precludes a consideration of the doctrine "contra non valentem" in this state. Be this as it may, the Supreme Court has many times recognized the underlying justice of the doctrine and has applied it on many occasions. The leading authority on this subject is the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, where the Court discussed this question in detail and concluded that the doctrine may be invoked in this state, as a cause for suspending the course of prescription, in cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt.' Numerous cases cited.
"The Third Circuit Court of Appeal refused to apply the maxim of `contra non valentem' in the recent case of Gaspard vs. Liberty Mutual Ins. Co., 243 So.2d 839 (1971).
"It is clear from the jurisprudence that the doctrine will be applied to suspend the running of prescription should the facts of the particular case allow it.
"The cases seem uniform in holding that it may be applied when the inability of the plaintiff to act has been brought about by fraud, concealment, design or some ill practice by the defendant.
"Now then, should the doctrine of `contra non valentem' be applied to suspend the running of prescription in the action to reduce the alleged excessive donation of Anna Sonnier Latiolais? We know that Francois Latiolais had reached majority prior to his mother's death in 1960 and I am satisfied from the evidence that he had never been able to manage his own affairs. Evestier Clement, the defendant in this action and the one who is to benefit in the event the plaintiff is unsuccessful in this litigation is, at best, a semi-illiterate. It is noted in the Succession of Clodus Latiolais and wife, Anna Sonnier Latiolais, No. 3530, Fifteenth Judicial District Court, Acadia Parish, Louisiana, that Evestier Gene Clement and Francois Latiolais were both named as petitioners and each affixed a mark in lieu of a signature, presumably because neither possessed the ability to write. Now, can it be said that this person has been guilty of fraud, concealed facts, did anything or failed to do anything with *709 the intent to deprive Francois Latiolais of any right? Did he perform any act designed to allow prescription to run? I don't think so. The evidence surely does not reflect this. He was guilty of no wrong-doing. Clement is Francois Latiolais' step-father and was under no legal obligation to have him interdicted. It is difficult to assign this obligation to any person known to this court. It is true that he was interdicted upon petition of his cousin but I have been cited no law which imposed this obligation. I can find no support from the jurisprudence to extend the doctrine of `contra non valentem' under the instant situation.
"It is true that the Civil Code will not permit prescription to run against interdicts except in cases provided by law. LSA-C.C. arts 3522 and 3554. But this affords little solace to plaintiff because Francois was not interdicted until more than 5 years after the last will of Anna Latiolais was probated, which is the date prescription began to run. Succession of Ball, 42 La.App. 204, 7 So. 567 (1890).
"This is a unique factual situation, the identical of which I have been unable to find despite an exhaustive search of our jurisprudence, although Cox vs. Von Ahlefeldt, supra, is closely analogous. However unfortunate it may be, it seems that the remedy in such a situation lies with the Legislature and not the court. Appropriate here is the language of the Court in Koepping v. Monteleone, 143 La. 353, 78 So. 590 (1918), as follows:
"`The Legislature of this state might have established an exception to meet the contingencies of this case, but it has not; and the court cannot.
`The Code has furnished a rule, and it is imperative, even if that rule is shown to be defective, and careful and weighty considerations of policy are appealed to in favor of another view. In Cox v. Von Ahlefeldt, 105 La. 544, 582, 30 South. 175, where suit was instituted on behalf of an imbecile who had not been interdicted, the court said that the exception made in the law was in favor of minors and interdicted persons and that the breach would not be widened for the purposes of the case then before it, so as to include an imbecile who was not interdicted.'
"For these reasons, the Exception of Prescription should be sustained and plaintiff's suit dismissed at his costs.
"The allegations and the evidence does not justify the relief sought by plaintiff in his alternative plea so the same is denied."
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.