CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability resulting from an accident which occurred during his employment by the defendant, Gas & Well Operating Service, on April 3, 1968. The district judge found plaintiff’s disability continued until October 13, 1970. Defendant appealed. Plaintiff answered the appeal, contending his disability is permanent.
The issues are (1) defendant’s exception of prescription and (2) the duration of disability.
DEFENDANT’S EXCEPTION OF PRESCRIPTION
The first issue concerns defendant’s exception of prescription of one year. Defendant made weekly payments from the date of the accident on April 3, 1968 through October 23, 1968. The last check was dated October 22, 1968 and was received arid deposited by plaintiff on October 26, 1968. This suit was filed on October 28, 1969.
Under LSA-R.S. 23:1209, as construed by Seligia v. American Mutual Liability Insurance Company, 174 So.2d 878 (4th Cir. 1965) and cases cited therein, the prescription of one year commences from the date of receipt of the last payment. Hence, the present suit is prescribed unless plaintiff can show a legal excuse for failure to file suit within a year of October 26, 1968, the date he deposited the last check.
Plaintiff contends the lateness of his suit was the result of the defendant-insurer’s misrepresentation as to the date compensation was terminated. The evidence shows that in response to a letter written by plaintiff’s attorney, inquiring as to the status of the claim, the insurer’s adjuster wrote a'letter dated May 13, 1969 reading in part as follows:
“I am enclosing at this time copies of all the medical contained in our claim file. I call your attention to the report of Dr. A. W. Ambrister, dated October 28, 1968. We concluded that your client has no further disability and no permanent residual disability from his injury, and on the basis of that report we terminated compensation.” (Emphasis supplied)
Plaintiff’s attorney emphasizes the last statement in the letter that “on the basis of that report we terminated compensation.” Since Dr. Ambrister’s report was dated October 28, 1968, the necessary inference from the letter is that the last compensation payment was not made until after that date.
The most recent case from our Supreme Court on the issue is Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972) where the court stated the law with citation of authorities as follows:
“The purpose of the one year prescriptive period is to protect' employers from the burdensome litigation of stale claims. When, however, the employer lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, the employer cannot invoke the time bar to defeat compensation. See Thornton v. E. I. DuPont De Nemours & Co., 207 La. 239, 21 So.2d 46; Richard v. Liberty Mutual Insurance Company, La.App., 188 So.2d 432; Williams v. Red Barn Chemicals, Inc., La.App., 188 So.2d 78; 3 Larson’s Workmen’s Compensation Law, § 78.45, pp. 107-108.”
The Dupaquier case is particularly applicable here since under its facts there was no deliberate or intentional misrepresentation by the employer for the purpose of lulling plaintiff into not filing suit. The evidence showed only that the fire department officials had through neglect contributed to the misinformation upon which *600 plaintiff relied, i. e., that sick leave benefits received by plaintiff included workmen’s compensation. In the present case also, there is no showing that the misstatement by the insurer in its letter of May 13, 1969 was deliberate or intentional. Nevertheless, it was a misstatement on which plaintiff relied.
The insurer argues that attached to its letter of May 13, 1969 was a copy of Dr. Ambrister’s report dated October 28, 1968, which shows that his examination was on October 22, 1968. Defendant contends a reading of Dr. Ambrister’s report should have alerted plaintiff to the fact that the last check was mailed soon after the date of the examination in which plaintiff was found to be recovered. We cannot agree. Of course, Dr. Ambrister’s report does not show the date the last payment was made. The letter of May 13, 1969 misstates that it was made after October 28, 1968. This misrepresentation, although unintentional, was relied on by plaintiff.
We conclude the exception of prescription was correctly overruled by the district judge.
ON THE MERITS
The next issue is the extent and duration of plaintiff’s disability. The evidence shows that plaintiff is 45 years of age and was working as a roustabout in an oilfield. He was kneeling on one leg, adjusting a pipe, when another piece of pipe fell on his head, shoulders and back.
Plaintiff was initially seen by Dr. Joseph A. George, a general practitioner of Lake Arthur, who diagnosed a “laceration of the head, left knee and leg and sprain of the cervical spine.” This physician’s prognosis was complete recovery in three to six months from the date of the accident. He referred plaintiff to Dr. George P. Schneider, an orthopedic specialist of Lake Charles, for consultation.
Dr. Schneider examined plaintiff on May 14, 1968 and found only “residuals of a spraining injury to the neck”. He recommended continued conservative treatment and his prognosis was complete recovery within three months from the date of his July 19, 1968 examination.
Plaintiff was examined on October 22, 1968 by Dr. Jerome W. Ambrister, an orthopedic specialist, who found plaintiff “had recovered completely from whatever injury he may have incurred and was physically able to return to his previous occupation as a roustabout.” It was on the basis of this medical report that the defendant insurer terminated compensation.
On May 18, 1969, plaintiff was seen by Dr. Harold J. Sabatier, for complaints of pain in the neck and back and numbness of his left foot. Dr. Sabatier referred plaintiff to Dr. Homer Kirgis, a neurosurgeon of New Orleans, who examined plaintiff on two occasions, May 25, 1969, and November 14, 1969. Dr. Kirgis expressed the opinion that plaintiff “must have sustained multiple strains of the paraspinous muscles and ligaments.” He found slight spasm of the left trapezius muscle. However, after his second examination, Dr. Kirgis was of the opinion that he should be able to return to light work for about a month or six weeks and then assume his regular heavy manual labor.
On July 3, 1970, plaintiff was seen by Dr. Richard W. Levy, a neurosurgeon of New Orleans, who found no neurological disability.
On July 14, 1970, plaintiff was re-examined by Dr. Ambrister who confirmed his earlier opinion that plaintiff had recovered from the accident as of October 22, 1968, and that he was able to return to work.
Plaintiff was next examined on August 24, 1970 by Dr. J. Boring Montgomery, a general practitioner of Lafayette, who found tenderness in the cervical and lumbar spine and expressed the opinion plaintiff was still disabled. The district judge stated in his written opinion that he was not impressed with the testimony of Dr. *601 Montgomery. We think this is a proper evaluation.
On October 13, 1970, plaintiff was seen by Dr. Michael E. Carey, a Board Certified Neurosurgeon, who is an assistant professor of surgery at the Louisiana State University in New Orleans. Plaintiff complained of pain in the cervical and lumbar spine. On the basis of plaintiff’s subjective complaints, Dr. Carey found minimal numbness in the leg and expressed the opinion that plaintiff could possibly return to work with “a modicum of pain.” However, Dr. Carey said he found no objective evidence of neurological disease.
The district judge’s evaluation of this conflicting testimony was to find disability to the date of Dr. Carey’s examination on October 13, 1970. Defendants make a strong argument that the preponderance of the expert medical testimony shows plaintiff recovered by October 22, 1968. They note particularly that plaintiff did not complain of lumbar pain until he saw Dr, Ambrister, six months post injury, and say this discredits Dr. Carey’s findings two and one-half years post injury. Nevertheless, we are unable to say the district judge was manifestly erroneous.
A further issue is presented by plaintiff’s contention that he is disabled by traumatic neurosis. It was not until April 1, 1971 that plaintiff was examined by Dr. William P. Cloyd, Jr., a psychiatrist of Lafayette. This physician saw plaintiff only one time and, based on an examination of about one hour, expressed the opinion that plaintiff was suffering from a traumatic neurosis caused by the accident. The district judge correctly disposed of this issue in his written opinion by stating that he found the evidence insufficient to prove traumatic neurosis citing Jackson v. International Paper Company, 163 So.2d 362 (La.App. 3rd Cir. 1964) and Thomas v. American Insurance Company, 153 So.2d 918 (La.App. 1st Cir. 1963) which hold that due to the vague and nebulous nature of this condition, the evidence supporting such a claimant be carefully scrutinized.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.
HOOD, J., dissents being of the opinion that the trial judge erred in overruling the exception of prescription.