Maude SPRINKLE, wife of and A. Fred Sprinkle, Plaintiffs-Appellants,

v.

FARM BUREAU INSURANCE COMPA-NIES, Crawford & Company, Adjusters and Pete E. Thomas, Defendants-Appel-lees.

No. 73–1269.

United States Court of Appeals,
Fifth Circuit.

April 12, 1974.

Garic Kenneth Barranger, Covington, La., for plaintiffs-appellants.

John J. Hainkel, Jr., Geoffrey H. Longenecker, New Orleans, La., for defendants-appellees.

Before BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

On December 26, 1970, plaintiffs-appellants, Maude and Fred Sprinkle, elderly residents of North Carolina, were injured in an automobile accident near Covington, Louisiana. On February 2, 1972, pursuant to 28 U.S.C. § 1332 (1970), they filed suit in the United States District Court for the Eastern District of Louisiana against Farm Bureau Insurance Companies, Crawford and Company, Adjusters, and Pete E. Thomas. Defendants answered, and moved to dismiss the complaint on grounds of prescription under Louisiana law. After hearing oral argument from counsel for both sides, the district court on November 15, 1972, granted defendants' motion and dismissed the case. Asked to review the propriety of the district court's ruling that plaintiffs' complaint was barred by prescription, we reverse and remand the case for further proceedings.

After defendants filed their motion to dismiss but before the hearing on the motion, plaintiffs were deposed and filed their depositions with the court. For purposes of the motion to dismiss for prescription defendants apparently have chosen not to dispute plaintiffs' allegations. Accordingly, in reviewing the district court's order of dismissal we accept as true plaintiffs' allegations as outlined in the original complaint and detailed in the depositions.

Plaintiffs alleged that the automobile accident in which they were injured was caused by the negligence of the other driver in driving on the wrong side of the road while intoxicated. The other driver fled the scene, but shortly thereafter was identified as defendant Pete E. Thomas. Initially Thomas "fraudulently denied that he had any insurance," but approximately two months after the accident plaintiffs learned that Thomas was insured by defendant Farm Bureau Insurance Companies.

According to plaintiffs, they were approached at their home in North Carolina by representatives of defendant Crawford and Company, adjusters acting for and on behalf of Farm Bureau, who led plaintiffs to believe that they would receive a settlement of their claim against defendants. Plaintiffs reported telephone calls from Crawford and Company on the average of once a month, generally advising them that "everything was all right and if [they] could do anything to help to call." Plaintiffs also introduced various letters from the Asheville, North Carolina, office of Crawford, the first dated March 30, 1971, the last dated November 5, 1971. A letter dated September 14, 1971, said: "Please contact me by phone as we still have your interest in mind and we would like to attempt to settle your claim."

In late November or early December 1971, a representative of Crawford told plaintiffs that their physician should forward copies of a final medical report to Crawford in Asheville, and that after a review of the records Crawford would contact plaintiffs again. According to Mr. Sprinkle, at that time the Crawford representative advised them "to be sure we are all right, to take our time, that we had plenty of time." Plaintiffs alleged that they had an appointment with their physician on the first available date, December 9, 1971, and that the medical report was forwarded to Craw-

ford. They never heard from Crawford again, however, but instead received a letter from Farm Bureau, dated January 19, 1972, advising them that their claim had prescribed and was now barred by law, and no settlement would be made. Plaintiffs alleged that although they knew North Carolina had a three year statute of limitations for claims like theirs, they were never advised by defendants that a settlement would have to be effected prior to December 26, 1971, under Louisiana law. According to plaintiffs, through guile and subterfuge defendants deliberately misled them into believing a settlement was forthcoming, and thereby lulled them into a false sense of security, to their ultimate prejudice.

In the complaint filed in the district court, plaintiffs stated two causes of action. Their first cause of action claimed damages arising out of the automobile accident, though it did not state which defendants were to be liable for such damages. As a second cause of action, separate and independent of that arising from the accident itself, plaintiffs claimed damages against Farm Bureau and Crawford for their "separate and distinct torturous [sic] conduct." The district court's order dismissing the case on grounds of prescription apparently encompassed both causes of action. We treat first the dismissal of the cause of action arising from the automobile accident.

It is undisputed that Louisiana law applicable to the first cause of action commands a one year prescription period.[1] Appellants have sought to deflect the statutory command with the doctrine of *contra non valentem agere non currit prescripto* (No prescription runs against a person who is unable to bring an action). Both parties agree that *contra non valentem*, though originally a common law doctrine, has been granted explicit, albeit limited, recognition in the law of Louisiana. *See* R. J. Reynolds Tobacco Company v. Hudson, 5 Cir. 1963, 314 F.2d 776, 786–787. They disagree about whether this case falls within one of the limited circumstances in which the doctrine operates.

■ Appellees rely primarily on Thompson v. Staples, 5 Cir. 1965, 341 F.2d 536, a case very similar to the one at bar. There the plaintiff sought to avoid the prescription statute by alleging that an insurance adjuster representing one of the defendants had in word and deed made deliberate misrepresentations which led plaintiff reasonably to believe that the insurance company intended to settle the claim. According to the plaintiff, these misrepresentations caused her to forego taking any legal action on her claim during the year prior to the running of the prescriptive period. The district court, applying Louisiana law as it was bound to do under Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, determined that the plaintiff had not set forth a claim for avoidance of the prescription statute, and this court affirmed that decision.[2]

1. "The following actions are also prescribed by one year: . . . [T]hat . . . resulting from offenses or quasi offenses." La. Civil Code art. 3536.

2. In affirming we relied on Green v. Grain Dealers Mutual Ins. Co., 144 So.2d 685 (La. App.1962), another case on which appellees in the case *sub judice* put much weight. In *Green* an insurance adjuster for one of the defendants told the plaintiffs that they had two years in which to bring suit for injuries suffered in an automobile accident. The Louisiana court recognized that *contra non valentem* was recognized in the law of Louisiana under some circumstances:

The rule . . . is applied to prevent the injustice of an innocent party being lulled into a course of inaction in the enforcement of his right by reason of concealment or fraudulent conduct by defendant, or because of the defendant's failure to perform a legal duty causing the plaintiff to be kept in ignorance of his rights.

144 So.2d at 687.

The court refused, however, to apply the doctrine to the case before it because the misrepresentation was one of law, not facts, made by a layman upon whose legal advice reliance should not have been placed. The court noted that in any event under Louisiana law ignorance of the law is specifically rejected as an

**472**

Judge Tuttle recently wrote:

> We are bound by this Court's prior decisions on what is the law of a state in a diversity case, just as we are bound by prior decisions of this Court on what is federal law. *Stare decisis* requires that we follow our own earlier determination as to the law of a state in the absence of any subsequent change in the state law.

Newell v. Harold Shaffer Leasing Co., 5 Cir. 1974, 489 F.2d 103, 107. Plaintiffs seek to avoid the apparent command of *Staples* with the argument that Louisiana law has changed in the years since that decision. Notwithstanding the vigor and eloquence with which counsel for appellants briefed and argued this issue, we are not persuaded. ·

■ Four of the cases cited by appellants to support the argument that their position under Louisiana law has waxed while that of defendants has waned arose under the Louisiana workmen's compensation laws.[3] We find these cases inapposite. The workmen's compensation framework comprehends a more flexible attitude toward recovery for injuries than ordinary tort law, and recovery-oriented decisions in workmen's compensation cases, though consistent with the overall approach in that area, are not necessarily indicative of a court's attitude in ordinary personal injury cases.[4] For an indication of the Louisiana courts' attitude toward estoppel to assert prescription in non-workmen's compensation cases we need look no further than three recent decisions cited by appellees: Perrodin v. Clement, 254 So. 2d 704 (La.Ct.App.1971); Gaspard v. Liberty Mutual Insurance Co., 243 So.2d 839 (La.Ct.App.1971); Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916 (La.Ct.App.1970). All three decisions indicate that *contra non valentem* continues to flourish in Louisiana law, but nothing in them signals any recent flowering of the doctrine beyond its pruned and cropped appearance in *Staples*.[5] The law of Louisiana contin-

---

excuse to avoid prescription. The court added that misrepresentation of facts would rarely be enough to satisfy the doctrine when the true facts are equally accessible to both parties, and commented that Louisiana had not extended the notion of "equitable estoppel to claim prescription" as far as other jurisdictions cited by the plaintiffs.

3. Landry v. Ferguson, 279 So.2d 185 (La. 1973); Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972); Price v. Gas & Well Operating Service, 267 So.2d 598 (La.Ct.App.1972); Zeringue v. Liberty Mutual Insurance Co., 248 So.2d 83, 87 (La. Ct.App.1971).

4. This is especially likely to be true of decisions dealing with estoppel to assert limitations. The limitations period in workmen's compensation cases derives from a statute of peremption, La.Rev.Stat. § 23:1209, rather than from the statute of prescription applicable in most personal injury cases. Blanchard v. Liberty Mutual Ins. Co., 280 So.2d 592, 595 (La.Ct.App.1973). Under Louisiana law "peremption" formally extinguishes the right to recovery by destroying the cause of action, while "prescription" bars recovery in the courts of Louisiana but does not under Louisiana conflicts law close the doors to suit outside the Louisiana forum. Chevron Oil Co. v. Huson, 1971, 404 U.S. 97, 102, 92 S.Ct. 349,

30 L.Ed.2d 296, 303. That the courts of Louisiana carefully protect the special cause of action created by the workmen's compensation statutes against accidental or untoward extinction does not necessarily indicate a trend toward liberalizing escape from prescription in personal injury cases. Indeed, it seems rather unlikely that the Louisiana courts would mean for the doctrine of estoppel to assert limitations outlined in the workmen's compensation cases to apply in non-workmen's compensation cases without saying so explicitly, given the rather significant difference between that doctrine and the application of *contra non valentem* in cases such as Green v. Grain Dealers, *supra* note 2. Yet the recent workmen's compensation cases make no mention of the *contra non valentem* decisions.

5. Nor do we find in Bewley Furniture Co. v. Maryland Casualty Co., 271 So.2d 346 (La.Ct. App.1972), the support sought by appellants. In *Bewley* plaintiff attempted to recover for damages caused by leaks in a defective roof, but did not file suit for nearly two years after the leaks first began. The court held that *contra non valentem* applied because various representatives of the defendants had for most of the two years assured the plaintiff that the roof was not defective and that the leaks would be repaired; when the plaintiff finally discovered the truth, he filed timely

ues to be that a defendant seeking shelter in the truncated Louisiana period of limitations need not rest his hopes for litigious repose on his opponent's natural somnia, but may, if he chooses the lyrics with care, sing his opponent a fatal lullaby.

■ Though *Staples* continues to be binding precedent in this Court on the law of Louisiana, we discern one possibly significant difference between that case and the one *sub judice*. According to appellants, defendant Thomas' allegedly fraudulent statements and misrepresentations prevented them from discovering the fact that he was insured until nearly two months after the accident, or sometime in February 1971. The Louisiana law has been and continues to be that *contra non valentem* applies where fraudulent conduct has concealed the identity of parties, at least where the plaintiff has exercised reasonable diligence in seeking the facts. *See* Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916, 919–920 (La.Ct. App.1970).

■ The district court apparently did not consider the possibility that acts or statements by defendant Thomas might operate to trigger *contra non valentem* against one, some, or all of the defendants named in appellants' suit. From the papers now before us we are unable to determine the exact nature of Thomas' actions, or if they would amount to the kind of fraud necessary under *Dagenhart*. It does appear, however, that the suit was filed within one year of the discovery of the identity of defendant Farm Bureau Insurance Companies as insurer of defendant Thomas. Accordingly, we reverse the district court's holding that the first cause of action was barred by prescription, and remand for the purpose of determining the possible existence of *Dagenhart*-type circumstances for the application of *contra non valentem*.[6]

■ We also conclude that the district court erred in dismissing the second cause of action against Farm Bureau and Crawford for "separate and distinct [tortious] conduct." We recognize that the claim is pleaded with something less than model precision and clarity, though the district court dismissed for prescription rather than for failure to state a claim. In their briefs appellants refer to it as possibly an action for "injurious words," which under La.Civil Code art. 3536 and art. 3537 prescribes within one year from the date "on which the injurious words, disturbance or damages were sustained." This would be later than the date of the accident, and possibly as late as November or December 1971. Moreover, the alleged representations by Crawford may constitute a tort occurring in North Carolina, requiring the district court in Louisiana to consider which state's prescriptive period would apply, what its duration would be, and whether that period has been tolled for any reason. Accordingly, we reverse as to the second cause of action, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

suit. The court reasoned that the representations made by the defendants lulled plaintiff into a false sense of security by disguising and hiding the existence of a cause of action. Though the leaks were apparent, that they were a basis for a cause of action was not evident until defendants ceased promising the plaintiff that the leaks would stop or be repaired. This application of *contra non valentem* is completely consistent with the Louisiana law before *Staples*, see, e. g., Kennard v. Yazoo & M.V.R. Co., 190 So. 188, 190–191 (La.Ct.App.1939). More important, *Bewley* is of no help in the case at bar because here though plaintiffs were perhaps lulled into a false sense of security by representations from defendants, they were at no time misled about the existence of a legal cause of action. The statements allegedly made by Crawford representatives may have fooled appellants about the need to seek legal enforcement of the claim, but they did not disguise the fact that there was a claim.

6. We do not mean to limit the district court's freedom of inquiry on remand, but we do note that at oral argument counsel for appellants conceded that Thomas' flight immediately after the accident concealed his identity for only a very short time, and did not materially affect the filing of the suit.