310 So.2d 680 (1975)
Della Tassin, wife of, and Wess J. TASSIN
v.
ALLSTATE INSURANCE COMPANY et al.
No. 6640.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 20, 1975.
*682 Arnold C. Jacobs, New Orleans, for plaintiffs-appellants.
Murphy & Simon, E. Kelleher Simon, New Orleans, for defendant-appellee, Allstate Ins. Co.
Frans J. Labranche, Jr., Bossier City, in pro. per. and amicus curiae.
Before BOUTALL, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
On April 20, 1972, plaintiffs filed suit for personal injuries growing out of an automobile accident which occurred on March 9, 1971. Defendants filed the peremptory exception of prescription based upon LSA-C.C. Art. 3536. This exception was referred to the merits and after trial was overruled by judgment dated December 5, 1973. Subsequently, on February 22, 1974, plaintiffs were awarded judgments in favor of Mrs. Tassin in the amount of $3,000, and Mr. Tassin in the amount of $933.21.
From the latter judgment plaintiffs appealed, seeking an increase in the quantum awarded to Mrs. Tassin, and defendants answered the appeal seeking a reversal of the judgment of the trial court overruling the exception of prescription. It is prescription which provides the central issue on appeal.
Plaintiffs' first argument is that defendants stipulated liability, confessed judgment and precluded themselves from appealing from the judgment overruling their exception of prescription. In order to consider this argument it becomes necessary first to consider the procedural steps leading up to and taking place after the judgments of the trial court.
On February 16, 1973, the trial on the exception commenced with the testimony of Mr. Frans J. Labranche, who had represented plaintiffs. At the conclusion of his testimony defendants' counsel asked for the opportunity to produce Allstate's personnel in rebuttal whereupon the trial judge referred the exception to the merits. A minute entry to that effect gave defendants fifteen days to file pleadings, and on February 23 defendants filed their answer in which they reaffirmed their plea of prescription.
At the outset of the trial on the merits on September 20, 1973, there is a statement by counsel for defendants that he "would be willing to stipulate to the liability in this case provided the suit is amended instanta (sic) to limit the total of the suit to $10,000.00." Whereupon the trial judge authorized the amendment. Immediately thereafter defendants' counsel raised the pending exception of prescription, there was discussion among counsel and the court as to which side had the burden of proof and who would call as witnesses the personnel of Allstate. When defendants' counsel prepared to call his first of these witnesses Mr. Labranche made the following statement:
"At this time to perhaps clarify, I don't think there is any dispute. I would like to move the Court to make an instanta amendment to the petition to the effect *683 and to make it definitelv clear that we are changing our amendment and would be to the effect in additional paragraph stating that Allstate Insurance Company promised the attorney for the plaintiff that it would settle the case and for plaintiff's counsel not to file suit, acknowledging liability in the matter and in fact paid the subrogated auto damage to State Farm on August 26th 1971. That prescription has been interrupted and/or suspended."
Defendants' objection to the amendment was then overruled and the case went to trial on a waiver by defendants of further delay notwithstanding the late amendment of the pleadings. Defendants' evidence consisted of the testimony of Mr. Frank Arrigo primarily and a number of other Allstate personnel.
From the foregoing we find no merit to plaintiffs' contention that defendants unconditionally stipulated liability and confessed judgment. At all times they clung to their exception. Considering their stipulation as to liability in the context of the pleadings and the record of what was said and done at trial, we have concluded that the stipulation was with reservation by defendants of their rights under the exception.
Nor is there any merit to plaintiffs' contention that defendants' appeal is inadequate on the question of prescription. While recognizing that defendants could not take an appeal from the first judgment which was not final, plaintiffs argue that since they appealed only from the final judgment as to quantum and since defendants did not independently appeal but only answered plaintiffs' appeal the scope of the appeal is limited to quantum. Plaintiffs' argument is disposed of by LSA-C.C.P. Art. 2133 which provides:
"The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in his answer."

In their answer defendants specifically complain about the judgment overruling their exception of prescription.
The foregoing arguments of plaintiffs were raised not only in their brief but also in a motion to dismiss the appeal of defendants. It follows that this motion is denied.
The trial court gave the following reasons for judgment on the exception of prescription:
"1) The burden of establishing prescription was on Allstate and they did not carry this burden. Plaintiffs' counsel testified that Allstate asked him to withhold filing suit and promised they would settle; none of Allstate's witnesses were actually able to deny this. In fact this Court was unimpressed with the witnesses for Allstate since none of them had any independent recollection of the facts. Several Allstate witnesses, while reading from their own records, were caught reading in words which in fact were not there. Their record did not support defendants' position.
"The letter from Allstate to plaintiffs' attorney in May, 1972 apologized for the misunderstanding. This Court finds that this confirms that plaintiffs' attorney had in good faith relied on Allstate's commitment, and Allstate knew this. It is also significant that Allstate's file was passed on to a new adjuster after the regular one year prescriptive period. This Court believes this would not have been handled in that manner if Allstate really believed prescription had run.
"Mr. Frank Arrigo, whom plaintiffs' counsel testified had admitted liability and asked him to withhold suit, was not able to deny that he in fact had made such a request and admission.
"This Court was impressed by Mr. Labranche's testimony. He had clear, independent recollection of the facts and this Court is convinced he told the truth. Mr. Labranche was subjected to a detailed *684 cross examination by defendant, and his testimony was definite and unimpeached. The same cannot be said of defendants' witnesses, and this Court was not convinced of their veracity. Defendants' record is also suspect.
"2) Prescription was in fact interrupted and/or suspended by the actions of Allstate. The Court finds and Allstate's own record substantiates that they admitted liability, set and increased their reserve, paid the auto damage under a subrogation claim, and continued to negotiate or attempt to settle the case with plaintiff counsel after the one year period. This court finds from the evidence that it was defendants' intent to interrupt or suspend the running of prescription. Defendants made an acknowledgment of their obligation and purposely persuaded plaintiffs' counsel to withhold suit.
"3) Allstate is estopped to plead prescription. This Court finds that Allstate convinced plaintiffs' counsel to withhold suit and having accomplished their end, they cannot now come into Court and defeat plaintiffs' claim. This Court finds that equitable estoppel is applicable under the facts, and that defendant is in bad faith.
"4) In Summation:
This Court finds that Allstate did intend to interrupt and/or suspend prescription, and that plaintiff, in good faith, relied on Allstate's representations; and therefore, defendant is estopped to plead prescription."
At the outset, defendants insist that the trial judge erred in his statement that the burden of establishing prescription was on Allstate, and defendants contend that this error of law led to the erroneous result reached. We agree that the statement was erroneous since the law is clear that where the claim has prescribed under the allegations of the petition itself the burden is then on the plaintiff to show why the claim has not prescribed. But irrespective of this statement by the trial judge, we have the entire record before us in which both sides presented all of their evidence and we have evaluated that evidence with proper regard as to who had the burden of proof. Thus, the trial judge's statement constitutes harmless error under the circumstances.
There is no contradiction between Labranche and Arrigo to the effect that this claim was under active settlement negotiations from March, 1971, up until January, 1972. The trial judge accepted Mr. Labranche's testimony to the effect that he was under the impression that as of the last time he spoke to Arrigo in January it was not necessary for him to file suit, that the case would definitely be settled as soon as the medical reports were assembled, and that this impression remained even to the time when the suit was filed after it had prescribed on its face. The only serious contradiction between Labranche and Arrigo was to the effect that Labranche, on the one hand, said in January that Arrigo told him it was not necessary to file a suit and that the case would definitely be settled; whereas, Arrigo denied ever telling him such. We accept the credibility call by the trial judge in favor of Mr. Labranche, and proceed with the real issue in this case as to whether as a matter of law plaintiffs' suit has nevertheless prescribed.
Plaintiffs' argument is twofold: 1) That defendants are estopped by their words and actions from invoking the statute of limitation embodied in C.C. Art. 3536, and 2) that defendants acknowledged their debt so as to interrupt prescription under C.C. Art. 3520.
Taking the second point first, it is clear that this case is not controlled by LSA-C.C. Art. 3520, which provides, "Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed." In an excellent comment entitled "Interruption of Prescription *685 by Acknowledgment in Louisiana," 14 Tul.L.Rev. 430 (1940) cited in Lake Providence Equipment Company v. Tullulah Production Credit Association, 257 La. 104, 241 So.2d 506, it is said that an acknowledgment sufficient to interrupt prescription must be a clear, concise and express recognition of the right which the creditor claims. At no time did plaintiffs and defendants ever arrive at the amount of the settlement nor was an amount even discussed since Allstate's personnel were unwilling to evaluate the claim until such time as the medical reports were available. From our consideration of the many cases cited in the comment, we have concluded that this article of the Civil Code has reference to those situations where there is an acknowledgment of a note or an account where the amount of the claim is liquidated and not to be negotiated as in the instant case. As stated in Kennard v. Yazoo & M. V. R. Co., 190 So. 188 (La.App. 1st Cir. 1939) "A debtor cannot acknowledge a debt so as to stop the running of prescription against it without knowing what amount he is acknowledging."
The more troublesome issue in this case is plaintiffs' first point, that under the circumstances defendants were estopped from relying on the prescription of one year as a bar to plaintiffs' claim. Defendants rely primarily on the Kennard case, supra, which under facts considered the estoppel argument in the light of the rule of contra valentem agere non currit praescriptio or prescription does not run against the person who is unable to act. The court held as follows:
"The cases holding that prescription does not run against a claim which has been concealed by fraud until the creditor becomes aware of his claim are too numerous to cite. But there is no claim that the defendant in this case practised any fraud or deception on the plaintiff. About all that plaintiff claims or can claim in this respect is that he was led to believe that the defendant would adjust his claim when he furnished a discharge from his doctor, and that his failure to bring his action sooner was because of this promise on the part of defendant. It is argued that this act on the part of defendant was equivalent to a fraud and active concealment. However, it does not appear in what way plaintiff was misled or deceived as to any of his rights, nor does it appear that anything was put in the way of his asserting those rights during the prescriptive period. Defendant did nothing in the way of active machination to cause plaintiff to postpone filing his suit to enforce his claim before prescription accrued. The fact that defendant would not and did not adjust or pay his claim within the one year period should have been sufficient to cause plaintiff to assert his rights."
The Court concluded with the following:
"The situation in the present case is quite different. No contention is made that the railroad company omitted any legal duty toward plaintiff that could have prevented him from ascertaining and enforcing his rights within the time the law has given him. For the whole year during which the courts were open to plaintiff to assert his claim, he had just as much knowledge of his right, or at least could have had, as he did on the day when he filed his suit. We think the trial judge was correct in sustaining the plea of prescription in this case."
Thus, the Court applying the principle of contra non valentem, recognized that a defendant which practices fraud or misrepresentation on a plaintiff leading the plaintiff to allow the prescriptive date to pass by cannot rely on the doctrine of prescription thereafter, but found no such fraud or misrepresentation to have been shown. The element of fraud or misrepresentation seems essential to plaintiffs' case considering a number of other cases which have applied the same principles, e. g., White v. Hartford Casualty Insurance Company, 297 So.2d 744 (La.App. 1st Cir. *686 1974); Green v. Grain Dealers Mutual Insurance Company, 144 So.2d 685 (La.App. 4th Cir. 1962); Aegis Insurance Co. v. Delta Fire & Casualty Co., 99 So.2d 767 (La.App. 1st Cir. 1957); Davis v. Brown's Velvet Dairy Products, Inc., 43 So.2d 266 (La.App.Orl.1949) See also Sprinkle v. Farm Bureau Insurance Companies, 492 F.2d 469 (5th Cir. 1974).
While the trial judge found that Arrigo convinced Labranche to withhold filing suit with the representation that the case would be settled, the question remains as to whether this constituted the fraud or misrepresentation necessary to serve as a basis for estoppel under the doctrine of contra non valentem as discussed in the cited cases. The facts are perhaps stronger for plaintiffs than in the Kennard case because here we have the element of Arrigo asking Labranche to "hold out" with his suit in addition to leading him to believe that the claim would be amicably settled. But even assuming that this conduct did provide the element of fraud spoken of in the cited cases, the case of Williams v. Red Barn Chemicals, Inc., 188 So.2d 78 (La.App. 1st Cir. 1966) held that estoppel may serve to suspend prescription even with fraud or misrepresentation only if the following conditions exist:
1) "... that, in a proper case, words, actions, inactions, fraudulent conduct, or statements on the part of a defendant designed to and which do actually prevent a claimant from timely, judicially asserting his claim will constitute a suspension of the running of prescription for a period during which these words, actions, inactions, or fraudulent conduct or statements could reasonably be expected to prevent the judicial assertion..."

and
2) "... that the facts in any particular case be compelling so as to bring that case within that class of situations adequate to suspend the running of prescription and justify the plaintiff in bringing his action late, ..."
Thus, while fraudulent conduct is an ingredient for the application of estoppel, there must be words and actions by defendant which are designed to and which prevent the timely filing of a suit for estoppel to lie. Even conceding that defendants' words to Mr. Labranche were designed to prevent him from filing as of January, absolutely nothing prevented him from filing for the following two months.
Furthermore, the second essential condition does not exist, to wit, that the facts of the instant case are so compelling so as to suspend prescription and justify plaintiffs' late filing.
First, at all times plaintiffs were represented by an attorney at law, a factor in sharp contrast to all of the cases cited except the Aegis case where none of the plaintiffs was represented and each was perhaps at a disadvantage in dealing with defendant, yet in none of these cases did plaintiff prevail. Certainly, a more stringent application of the rules should apply in the instant case. Second, the last contact, a telephone call on January 6 between Labranche and Arrigo took place over two months before prescription ran and Labranche had no further contact with Allstate until March 29, 1972. The memorandum of the call in Allstate's file was to the effect that Labranche was opposed to giving Allstate an authorization to secure medical reports directly from the doctor and that "I don't think this case will ever get moving until we get medical reports." Allstate's file showed further that the medical report was not received by them until April 21, even though it was dated February 21, some seventeen days before prescription date. No matter what Labranche's impression might have been in January there is no satisfactory explanation for plaintiffs' inaction over the next two months, especially after the medical report was completed. There is no suggestion *687 by Labranche that any definite agreement was made by Arrigo as to how long prescription was to be suspended. Were we to hold that this telephone conversation in which Arrigo asked Labranche to "hold off" had the effect of suspending prescription for over two months, this would be tantamount to holding that prescription was suspended by Allstate indefinitely. No authority supports such a result. In any event, we have concluded that the facts of this particular case are not of the "compelling" character required to apply the doctrine of equitable estoppel as discussed in Williams v. Red Barn Chemicals, Inc., supra.
In Green v. Grain Dealers Mutual Insurance Company, supra, this Court through Judge (now Justice) Dixon found that plaintiff failed to state a cause of action to avoid the one year prescription even though plaintiffs alleged that defendants, while continuing to negotiate a settlement and to assure them that they would be paid, deliberately misrepresented to them that they had two years rather than one year in which to file suit. The Court relied on Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, and held that plaintiffs failed to exercise "reasonable diligence" in the pursuit of their claim. Applying this test to the instant case, we must conclude that plaintiffs failed to exercise reasonable diligence in pursuing their claim, especially considering the nature and time of the last contact with Allstate's personnel before the claim prescribed.
Accordingly, the judgment overruling the exception of prescription is reversed and set aside and there is judgment in favor of Tony Lamarca, Jr., Mrs. Josie H. Lamarca and Allstate Insurance Company, maintaining their peremptory exception of prescription, and against Della Tassin, wife of and Wess J. Tassin, dismissing their claim at their costs.
Reversed and rendered.
PER CURIAM.
In an application for rehearing Frans J. Labranche, Jr. has renewed the motion to dismiss the answer to the appeal filed by defendant Allstate Insurance Company on the ground that he just learned that defendant paid plaintiffs the amount of the judgment without a reservation of defendant's right to appeal so that the provisions of LSA-C.C.P. Art. 2085 are applicable to the effect that "an appeal cannot be taken by a party ... who voluntarily and unconditionally acquiesced in a judgment rendered against him ..."[1]
In opposition to the application for rehearing, defendant has filed affidavits by the attorney for the plaintiffs and former attorney for defendant to the effect that after the judgment was taken in the trial court they agreed that plaintiffs would take a devolutive appeal, defendant would not take a suspensive appeal, but defendant would reurge the exception of prescription on appeal by means of an answer to the devolutive appeal of plaintiffs, the judgment would be paid to plaintiff by defendant so as to prevent execution of the judgment and to terminate the accrual of interest; if the judgment of the trial court was reversed the aforesaid payment would be reimbursed by plaintiffs to defendant, and no release or satisfaction of the judgment would be executed by plaintiff in favor of defendant. The affidavits recite further that no release was executed, payment was made with full reservation of defendant's right to reurge the exception of prescription, and defendant's former counsel did not indicate any intention to *688 voluntarily or unconditionally acquiesce in the judgment of the trial court or to waive or abandon defendant's right to appeal.
Under the circumstances the case is much the same as Henry Waters Truck & Tractor Co., Inc. v. Relan, 277 So.2d 463 (La.App. 1st Cir. 1973). There the Court held that there was no unconditional acquiescence under C.C.P. Art. 2085 and denied defendant's motion to dismiss where plaintiff paid the full amount of the judgment to defendant, but at the time of the payment plaintiff's counsel advised defendant's counsel that plaintiff might later take an appeal and that there was no intention on the part of plaintiff to abandon the right of appeal.
The application for rehearing is denied.
NOTES
[1] Rule 11, Section 6 of the Uniform Rules Courts of Appeal, provides that "An application for rehearing will not be considered when the judgment of the court has merely overruled a motion to dismiss an appeal." We have considered the application for rehearing because our judgment was on the merits and did not "merely" overrule a motion to dismiss and because the application for rehearing is in part based upon matters which had not heretofore been brought to our attention.