297 So.2d 744 (1974)
Ella M. WHITE
v.
HARTFORD CASUALTY INSURANCE COMPANY.
No. 9861.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Vanue B. LaCour, Baton Rouge, for appellant.
Robert F. Kennon, Jr., Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.
This is a suit against the Hartford Casualty Insurance Company which was the liability insurer of an automobile owned by Ronald Cheek. Plaintiff alleges that on July 16, 1971, while plaintiff's automobile was stopped at a traffic signal at the intersection of U.S. Highway 61 and Louisiana Highway 41, it was struck from the rear by a Chevrolet automobile operated by Delma Cheek as agent, servant or employee of Ronald Cheek or as a member of the family for a family purpose and with the authorization and consent of Ronald Cheek.
A few days after the accident, plaintiff contacted the Baton Rouge claims manager of Hartford Casualty Insurance Company, William B. Petty, Jr., who interviewed her concerning her claim. Mr. Petty told the plaintiff that when her doctor released her there would be a settlement. Thereafter, Hartford, through its claims manager, paid all hospital and all medical bills which plaintiff submitted, paid $1,083.98 for repair of plaintiff's automobile and paid $580.98 car rental for a rented car which plaintiff used while her car was being repaired.
*745 Petty was transferred from the Baton Rouge office and Mr. Harold Brown succeeded him, assuming the position on February 9, 1972. On March 14, 1972, Mr. Brown telephoned plaintiff advising her that he had replaced Mr. Petty and made contact to determine if she was still seeing a doctor and to see if she had any other medical bills.
Plaintiff alleges that shortly before July 10, 1972, she telephoned Mr. Brown to inform him that she had additional bills which he instructed her to send in so that he could pay them. Plaintiff then alleges that the bills were sent in but not paid until August 4, 1972, at which time a draft was accompanied by a letter telling plaintiff that her claim had prescribed on July 16, 1972.
Plaintiff made one attempt to resolve the issue of prescription by personally visiting defendant's office sometime after her receipt of the August fourth letter wherein defendant denied any further liability because of prescription. Defendant steadfastly claimed that the action had prescribed, but offered plaintiff Two Hundred and No/100 ($200.00) Dollars in settlement. This was refused by plaintiff and suit was filed on February 15, 1973. Plaintiff alleged that the conduct of defendant's claims manager was a deliberate concealment and fraudulent inducement which lulled plaintiff into letting her cause of action prescribe.
Defendant filed a peremptory exception of prescription which the trial court upheld.
We agree with the trial court for the following reasons.
Nowhere in the transcript does this court find that defendant's adjuster ever failed to answer any questions asked by plaintiff nor did he ever induce plaintiff to wait beyond the prescription date to file a suit. Probably the most damaging testimony found in the record was plaintiff's own admission that she contacted an attorney three or four weeks after the accident occurred. She states that the concept or prescription was never brought out during this initial meeting with her attorney and it appears as though she never followed up her initial contact with her attorney. Another very relevant fact is that this suit was not instituted until seven months after the prescription date.
The cases cited by plaintiff as authority for interrupting prescription seem to involve fraud or willful inducement not to sue on a valid claim. In the case of Brandon v. Gottlieb, 16 La.App. 676, 132 So. 283 (La.App. 1st Cir., 1931), a release of a claim for wrongful death was held invalid because the evidence established fraud on defendant's part.
The case of Davis v. Whatley, 175 So. 422 (La.App. 1st Cir., 1937) held that a person unable to read or write would not be held to a release when he thought a signed receipt in full settlement was actually for money to pay a doctor. This case turned on a mistake of fact relative to the matter in dispute and on such a material part of the contract that the minds of the parties did not meet therefore the contract could not be binding.
In the case of Kennard v. Yazoo and M.V.R. Company, 190 So. 188 (La.App. 1st Cir., 1939), the court allowed the interruption of a one year prescriptive period under the doctrine of "contra non valentem" because the plaintiff had been lulled into a course of inaction in the enforcement of his right by reason of concealment and/or fraudulent conduct by defendant.
In the case of Williams v. Red Barn Chemicals, Inc., 188 So.2d 78 (La.App. 1st Cir., 1966), this court stated the law concerning the interruption of prescription, in matters of this nature.
"[T]he law of this circuit is that, in a proper case, words, actions, inactions, fraudulent conduct, or statements on the part of a defendant designed to and which do actually prevent a claimant *746 from timely, judicially asserting his claim will constitute a suspension of the running of prescription for a period during which these words, actions, inactions, or fraudulent conduct could reasonably be expected to prevent a judicial assertion." Williams, supra, 188 So.2d 78, 82.
Because of this very definite statement of the law by this Court and because the Williams case is cited by two succeeding cases with approval, it seems as though the instant case does not require the application of the doctrine of "contra non valentem" based on the facts at hand. A careful reading of the transcript indicates that no fraud was in any way perpetrated by or on behalf of Hartford Casualty. Hartford's claims manager handled plaintiff's claim in a routine fashion by taking signed statements and gathering medical information. Additionally, Hartford paid the repair bill for plaintiff's car in the amount of $1,083.98 plus rental expense for a substitute automobile of $580.98. There were also some initial medical bills paid.
The facts at hand indicate that there were no "words, actions, inactions, or fraudulent conduct" which prevented a judicial assertion of plaintiff's claim. Plaintiff appears to be an intelligent person who simply did not pursue all of the facets of her cause of action to the fullest.
We further hold that insurance adjusters have no duty to advise claimants on the Louisiana law of prescription. A case directly on point is Green v. Grain Dealers Mutual Insurance Company, 144 So.2d 685 (La.App. 4th Cir., 1962). Plaintiffs in that case alleged that defendant's adjuster told them that they had two full years to bring any legal action against defendants as a result of a tort allegedly committed by defendants. This was obviously erroneous and misleading, but the Court in Green stated:
"There is no allegation in the petition that the adjuster who made the representation concerning the two-year prescription period was anything but a layman. Even if he were a lawyer, it is alleged that he was the employee or agent of the defendant. The defendants and the plaintiffs were adversaries. There is no relationship alleged from which we can find the existence of a duty on the part of the adjuster to advise the plaintiffs correctly of the Louisiana law of prescription." Green, supra, 144 So.2d 685, 688.
"A simple inquiry to a Louisiana lawyer would have avoided plaintiff's difficulty." Id.

For the reasons assigned the judgment appealed from is affirmed at appellant's costs.
Judgment affirmed.