CRAIN, Judge.
This is an appeal from a judgment of the trial court dismissing the plaintiff’s suit against defendants Gulf States Utilities (hereafter Gulf States) and Buster Giam-brone.
This case arises from an accident which occurred on September 17,1978. The plaintiff, Robert Jones, was assisting in taking down a television antenna when it struck a Gulf States power line causing him to be shocked and severely injured. Jones had been employed by Rimes Wrecker Service for approximately one week prior to the accident. On the date of the accident, he agreed to assist another employee, Robert Rarick, to finish moving from Buster’s Trailer Park. Rarick had moved his trailer a few days before and all that remained on the lot were some portable steps, a small metal building, and a television antenna. The plaintiff and his brother, Tom Jones, met Robert Rarick and his brother, John Rarick, at the trailer park that day and, after removing the steps and the metal building, they discussed a plan which John Rarick had devised to lower the antenna.
The antenna stood 40 feet 9 inches tall and was about 15 feet south of Gulf States’ 31 ft. 1% inch power line. A wrecker was placed under the power line, and its winch cable was hooked to' the antenna. The plan called for Tom Jones to cut the two north *1136 ern guy wires, which would allow the men to gradually lower the antenna to the south; however, something went wrong and the antenna fell in the opposite direction into the Gulf States power line. Exactly what went wrong is unclear, although there was some evidence that Tom Jones cut the wrong guy wires. However, the trial judge felt that this was not clearly shown at trial.[1]
Robert Jones was apparently in contact with the wrecker when the antenna hit the wires. Since the antenna was attached to the wrecker’s cable, electric current went through his body, resulting in his injuries.
The plaintiff, Robert Jones, filed suit against Gulf States, Robert Rarick, Aetna Casualty and Surety Co., State Farm Ins. Co.[2], and Buster Giambrone, owner of the trailer park. A trial was held and a directed verdict was granted in favor of Gulf States and Giambrone. The trial court found in favor of plaintiff and against defendants Aetna and Robert Rarick. Subsequently, a release was executed by plaintiff in favor of Aetna for itself, Rimes Wrecker Service and Robert Rarick for the sum of $90,000, and a judgment was signed dismissing voluntarily those parties. Plaintiff expressly reserved his rights against Gulf States and Giambrone, and after a judgment was signed dismissing them from the suit, plaintiff appealed.
The appellant contends that Gulf States was negligent in failing to take precautions to protect against the foreseeable risk that a television antenna of such height would fall and contact its wires. Appellant further urges that we hold Gulf States strictly liable as the custodian of a thing under La.C.C. Art. 2317.
In Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the Louisiana Supreme Court held that a utility company is not absolutely liable for the electrocution of persons coming into contact with overhead electrical wires because:
“... the transmission of electricity over isolated high tension power lines is an everyday occurrence in every parish in this state and can be done without a high degree of risk of injury.. .”. 418 So.2d at 498, 499.
Consequently, the transmission of electricity through overhead transmission lines is not an ultrahazardous activity requiring the imposition of absolute liability.
On the other hand, the Court further noted that strict liability under C.C. Art. 2317 differs in analysis from ordinary negligence cases only in determining the existence of a duty. In ordinary negligence cases the duty arises from an owner or custodian’s knowledge or imputed knowledge of an unreasonable risk of injury from the thing owned or in custody. In strict liability cases the duty is implied from the mere fact of the owner’s relationship with and responsibility for the damage causing thing. Utility companies already know the risks involved to a person who comes into contact with a “hot” line not wrapped with insulating material. Thus, La.C.C. Art. 2317 is not helpful, and the analysis is simply one of whether, under the circumstances, the utility company took reasonable steps to protect persons against the known risk of coming into contact with the lines. Applying this analysis the Court found no liability in Kent.[3]
*1137 In the recent case of Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La., 1983), the Louisiana Supreme Court reviewed a case involving injuries to a worker who had made contact with electrical lines. Using the Kent analysis for the first time since handing down the Kent decision, a finding of no liability on the part of the utility company was reversed and damages awarded. It was pointed out that under rules of ordinary negligence electric transmission companies are required to exercise utmost care to reduce the hazard of injury as far as practicable. Factually, Hebert involved the electrocution of an experienced construction worker who was working on top of a metal building placing him in immediate proximity to a transmission line located 26.4 feet from the ground, but located in an industrial park where the construction of metal buildings close to the transmission lines was commonplace. Hebert made contact with the line with a 20 foot piece of angle iron. Another worker had been similarly injured earlier the same year. The method of construction was that usually employed. The Court held that the risk of injury was more easily associated with the lines than it would have been in an area where contact would have to have been from the ground such as in Kent. Consequently, there was a duty to insulate the lines, to warn of the danger or to take other proper and reasonable precautions.
In Hebert the Court referred liberally to Simon v. Southwest La. Elec. Membership, 390 So.2d 1265 (La.1980). There a man was fatally shocked when a forty-two foot drilling pipe he was removing at ground level from a well hole touched an overhead power line 26.7 feet from the ground. Employees of the utility company were aware of the drilling operation and had warned one of the individuals involved of the potential danger should contact be made with the electrical lines 15 feet away. The Court pointed out that although electric companies that utilize high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable, they are not required to anticipate every possible accident which may occur and are not the insurers of safety of persons moving around power lines in the course of everyday living. Accordingly, it was concluded that the warning given, coupled with the placement of the lines so that their presence was apparent, were sufficient to discharge the utility’s duty of care.
We find that the facts of the case at hand are closer to those in Kent and Simon than those in Hebert. This antenna was a very substantial structure supported by 6 guy wires and had been standing for almost one year. In Hebert, the Court found it significant that there was available no really safe method of placing a 20 ft. beam within 3-9 feet of a power line. However, in this case, there was a safe method of taking the antenna down, which was even discussed by the parties. By dismantling the antenna in sections the parties would have alleviated the possibility of contacting the power lines. However, Robert Rarick decided against taking the antenna down in sections, and the trial court found that he was negligent in devising and putting into effect the unsafe method of lowering the antenna intact. In addition, in this case there was some evidence that a third party, Tom Jones, actually caused the antenna to fall by cutting the wrong guy wires.
Most significant is the fact that there is nothing to indicate in this case, unlike the other cases cited, that Gulf States or its employees had any knowledge that this television antenna was to be removed. In fact, there is no evidence that Gulf States was ever made aware of the presence of this antenna 15 feet away from its power line. Appellant argues that employees of Gulf States came out to the trailer park on occasion and a few days before had disconnected the trailer’s power from a panel 20 feet away and therefore should have noticed the antenna and surmised that it was to be removed. We do not find that argument persuasive, as it places an unreasonable burden on Gulf States to locate every object which could conceivably fall on one of its power lines, and remove it. Robert Rarick testified that he was aware of the danger in removing the antenna so close to *1138 the lines, however he did not at any time inform Gulf States of the presence or impending removal of the antenna, nor ask for any assistance by Gulf States.
Under these circumstances, it is our opinion that Gulf States discharged its duty to the appellant by placing its lines well above the danger point of human contact, even without insulation, when it was not reasonably foreseeable that such an accident would occur. Without any prior knowledge of the antenna or its removal, Gulf States can not be held liable for a situation which was created by the parties in what they knew to be a dangerous situation.
The appellant also contends that the owner of the trailer park in which the antenna was erected, Buster Giambrone, was negligent in allowing Robert Rarick to erect the tower and is also strictly liable under C.C. Art. 2317.
We agree with the trial judge that Mr. Giambrone should not be held liable in this case. Mr. Giambrone gave permission to Robert Rarick to erect the antenna originally, however he was never told when the antenna was to be removed, nor was he aware of the plan for lowering it devised by Rarick. As the trial judge pointed out, there was present an intervening factor in this case that was really not under Mr. Giambrone’s control. That intervening factor was the negligence of Robert Rarick.
For the above reasons, the decision of the trial court is affirmed. Appellant is to pay costs.
AFFIRMED.

. Tom Jones was not called as a witness, although he was available in a neighboring parish.

. State Farm was dismissed without prejudice at the beginning of the trial.

. Factually, Kent involved an 18 year old employee of a road construction company involved in building a highway. This highway ran under three high voltage lines which were located 24 feet 8 inches above the highway and were clearly visible. Kent was aware of the lines. He was using a metal rake to create grooves in the slab. The rake had an aluminum handle which had been extended to a length of 30 feet by screwing together several sections. Kent stood on one side of the highway slab and his co-worker, Jenkins, on the other. Kent would pull the rake across the slab creating grooves, and return it by holding onto the rake head and letting the handle fall across the slab to be caught by Jenkins. In so doing while under the lines, the rake handle came into contact with the lines causing Kent’s electrocution.