492 So.2d 895 (1986)
Mitchell DEVILLE, Plaintiff-Appellee,
v.
LOUISIANA FARM BUREAU INSURANCE COMPANY, et al, Defendants-Appellants.
No. 85-754.
Court of Appeal of Louisiana, Third Circuit.
July 31, 1986.
Writ Denied October 31, 1986.
*896 Fruge & Vidrine, Richard W. Vidrine, Ville Platte, for defendants-appellants.
*897 John Haas Weinstein, Opelousas, for plaintiff-appellee.
Before GUIDRY, DOUCET and MANSOUR[*], DOMENGEAUX and LABORDE, JJ.
DOUCET, Judge.
The plaintiff seeks damages for injuries sustained as a result of receiving an electrical shock and severe burns while removing a C.B. antenna from the property of the defendant, Curtis Soileau.
On April 12, 1982, the plaintiff, Mitchell Deville, went to the home of the defendant, Curtis Soileau, to buy a C.B. antenna from the defendant's 18-year old son, Daniel Soileau. Daniel asked the plaintiff to help him take down the antenna, which was attached to a galvanized pipe, which was, in turn, attached to the back of the Soileau residence. As Deville and Daniel Soileau lowered the antenna into the yard, it struck a power line running across the property. Daniel Soileau was killed by the resulting electrical shock. Deville was severely shocked and sustained burns to both hands, and blow-out burns where the electrical current exited his feet.
Deville filed suit against Curtis Soileau and his insurer, Louisiana Farm Bureau Mutual Insurance Co. Farm Bureau filed an exception of prescription which was denied. After a jury trial, judgment was rendered finding Curtis Soileau negligent, and finding Deville contributorily negligent. Fault was attributed to 50% to Soileau and 50% to Deville. Damages were found in the total amount of $182,550.00. Deville was awarded $91,275.00. The defendants appeal both the denial of the exception of prescription and the finding of negligence on the part of Curtis Soileau.

PRESCRIPTION
The defendants assert that the plaintiff's cause of action prescribed because he did not file suit within one year after the accident. During the year following the accident, Deville had several contacts with Mr. Tassin, who was acting as agent for Farm Bureau. Mr. Tassin assured Deville that everything would be all right. About four days prior to the anniversary date of the accident, Mr. Tassin told Deville that Farm Bureau would pay him $12,000.00 and made arrangements to meet Deville with the check on April 11, 1983. Mr. Tassin did not show up for the meeting. Deville was unable to reach him when Mr. Tassin stated that the claim had prescribed and that Farm Bureau would pay only $1,000.00.
The Supreme Court, in Flowers v. United States Fidelity and Guaranty Company, 381 So.2d 378 (La.1980), outlined the law pertinent to this situation:
"Prescription of a right to damages for personal injuries or medical expenses arising from an offense or quasi-offense may be interrupted by either an express or a tacit acknowledgment of the right by the debtor.
"Louisiana Civil Code article 3520[1] does not require that an acknowledgment be in a particular form. It merely provides:
`Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgement of the right of the person whose title they prescribed.'
Accordingly, this Court has stated that acknowledgment sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways; and that it may be implicit or it may be inferred from the facts and circumstances. Lake Providence Equipment Co. v. Tallulah Prod. Cred. Assn., 257 La. 104, 241 So.2d 506 (1970). Upon reconsidering this interpretation of Article 3520, we find that it is *898 solidly based upon doctrinal writings. For example, Baudry-Lacantinerie & Tissier observe:
`Acknowledgment interruptive of prescription results from any act or fact which contains or implies the admission of the existence of the right. It can be express or tacit. When express, it is not subject to any particular form. It can be verbal or in writing.' 5 Civil Law Translations, Baudry-Lacantinerie & Tissier, Prescription, § 529, p. 261.
Also, Aubry and Rau maintain:
`The acknowledgment with the interruptive effect may be express or tacit. No specific form is prescribed for the express acknowledgment; it may be by regular mail or even orally. Tacit acknowledgment results from any action which amounts to an admission of the creditor's or owner's right, for instance the payment of a bill as debtor; payment of a portion of the debt, interests or arrears by the debtor or his agent; a request for a postponement of a payment; and, a fortiori, the payment of the amount due by the agent of the debtor. The same would be true of an offer to pay the damages caused by a tort, made by the defendant in the course of the trial, or of an actual act of reparation or indemnity.' 2 Civil Law Translations, Aubry & Rau, Property, § 215, No. 304, p. 344 (1966). (Emphasis added)
See also, 2 M. Planiol, Treatise on Civil Law, §§ 665 et seq. (La.St.Law.Inst. Transl.1959); 5 Civil Law Translations, J. Carbonnier, Notes on Liberative Prescription, pp. 465-66. Accordingly, we adhere to our view that Article 3520 does not require that an acknowledgment be in any particular form.1
"Furthermore, prescription of a civil action based on an offense or quasi-offense is governed by the same rule pertaining to interruption by the debtor's acknowledgment as other civil actions. By its terms Article 3520 is applicable to the prescription of all rights or actions and we find no justification in the civil code for insulating rights based on offenses or quasi-offenses from its effects. Again, we find that this view is consistent with the interpretations of the doctrinal commentators. See 5 Civil Law Translations, Baudry-Lacantinerie & Tissier, Prescription, § 531, p. 264; 2 Civil Law Translations, Aubry & Rau, Property, § 215, No. 304, p. 344; see also Flowers v. U.S. Fidelity & Guaranty Co., 367 So.2d 107 (La.App. 4th Cir.1979) (Lemmon, J., dissenting).
"The view has been expressed in several court of appeal opinions that Article 3520 provides for the interruption of prescription by acknowledgment only on claims to liquidated amounts. Wooden v. Hartford Ins. Co., 335 So.2d 742 (La.App.2d Cir. 1976); Tassin v. Allstate Ins. Co., 310 So.2d 680 (La.App. 4th Cir.1975); Kennard v. Yazoo & M.V.R. Co., 190 So. 188 (La. App. 1st Cir.1939). These holdings are contrary to statutory law which is clear and free from all ambiguity; they are also in conflict with civilian doctrine. These opinions, therefore, cannot be considered as correct interpretations of Civil Code article 3520. Accordingly, they are overruled."
We find from the evidence that the insurer intended to acknowledge Deville's rights. In fact, a settlement had been negotiated. His "right" to recovery was recognized by the actions of the insurer through its agent. Therefore, prescription of Deville's claim was interrupted by the tacit acknowledgement of the debtor. See: Richardson v. Louisiana Farm Bureau Mutual Insurance Co., 393 So.2d 200 (La. App. 1st Cir.1980) writ denied 398 So.2d 529 (La.1981).

NEGLIGENCE
The defendants argue that the jury erred in finding them liable because Curtis Soileau breached no duty owed to the plaintiff.
Before a determination of liability can be made, a causal relationship must be established between the harm to the plaintiff and the landowner's conduct. Once this has been established, it must be shown that the conduct complained of constituted *899 a breach of a legal duty imposed to protect against the particular risk involved. Lear v. U.S. Fire Insurance Co., 392 So.2d 786 (La.App. 3rd Cir.1980). There is a clear causal connection between the maintenance of the C.B. antenna on Mr. Soileau's property and Deville's injuries.
"This Court, in Levert v. Travelers Indemnity Company, 140 So.2d 811 (La. App. 3 Cir.1962), stated the duty of a homeowner to an invitee, which we analogize to the plaintiff in this case, on page 813:
`The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.'"
Lear, supra.
A premises must be kept in a safe condition consistent with the purposes for which they were intended. Calhoun v. Royal Globe Insurance Co., 398 So.2d 1166 (La.App. 2nd Cir.1981).
In this case, Mr. Soileau was aware of the presence of the C.B. antenna on his property. In fact, he gave the antenna to his son, Daniel, and mounted it on the pole against the back of their residence. Curtis Soileau was further aware that Daniel had arranged to sell the antenna to someone, although he was not aware that it was to Deville. He knew that the antenna would have to be dismounted from its position above the house.
Mr. Soileau installed the antenna, therefore he knew better than any one its proximity to the power line. There is no evidence that he attempted any warning when he learned that the antenna was to be removed. He testified that Daniel had permission to invite anyone he chose onto the property. Deville was invited onto the property for the purpose of removing the antenna. Under the above cited standard, the premises should have been maintained in a safe condition for that purpose.
"On the other hand, the occupier does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it." (Citations omitted)
Lear, supra.
We cannot say that Deville assumed the risk in this case.
"Assumption of risk is properly applicable when plaintiff was fully aware of the risk and voluntarily encountered it. See Dorry v. LaFleur, 399 So.2d 559 (La.1981). Contributory negligence is applicable where plaintiff's conduct was unreasonable in the face of known or reasonably foreseeable danger."
Navarro v. South Central Bell Telephone Co., 470 So.2d 983 (La.App. 1st Cir.1985).
In this case, the risk of dropping the antenna on the high voltage wire was not entirely apparent. In fact, only the top two inches of the antenna touched the wire Deville had never before been to the Soileau residence. Under the circumstances, we cannot say that the plaintiff was fully aware of the risk and voluntarily encountered it. However, Deville was aware of the wire. Therefore, the jury was correct in finding Deville to be contributorily negligent because his conduct was not reasonable in that there was a reasonably foreseeable danger in the activity. Accordingly, we find that Mr. Soileau did breach a duty *900 owed to Deville, and that the breach caused the injury to Deville, and that Deville's own negligence contributed to his injury.

DAMAGES
Finally, the defendants contend that the damages awarded to Deville were excessive.
"The amount of damages to be awarded for personal injuries lies within the sound discretion of the trial court and is not to be disturbed on appeal unless the record clearly reveals that the court abused its much discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976)."
Menard v. Prejean, 374 So.2d 1275 (La. App. 3rd Cir.1979). Our review of the record reveals no such abuse.
As a result of the accident, a quarter size hole was burned through the bottom of Deville's left foot and a fifty-cent piece size hole was burned in the right foot. When his boots were removed it was found that parts of his boots and socks were imbedded in the wounds and had to be cut out. His hands also were severely burned to such a point that they were covered with a soot-like substance and were stiff and "tight". For about two months after the accident, Deville had to undergo daily therapy, whereby his burned feet were soaked in a hot whirlpool and debridement treatments, where dead tissue was cut out of his wounds, were administered. Dr. Gordon Soileau, the treating physician, testified that this treatment would cause only "discomfort". However, both Deville and the physical therapist who administered the treatment testified that they were an extremely painful experience. The trier of fact is in the best position to evaluate the credibility of the witnesses. Therefore, the appellate court must give great weight to such conclusions. We find no error in this determination.
Deville was unable to work for about eleven weeks. He was unable to return to his former job as a welder because of his inability to stand for long periods of time. He returned to work before being released to do so because he needed to pay his medical bills. He worked briefly for Bayou Sales and Lithcote respectively. While working at those jobs, he had problems with his feetthe right foot in particular. It would bleed into his boot if he spent too much time on his feet. Both feet were generally swollen and painful at the end of the day. Daily home whirlpool treatments and cleaning of the wounds were required. Deville left both these jobs because they were too hard on his feet. Four weeks of work were lost. Finally, he found a job with SLEMCO as a map-maker, a job which is done mostly from a truck and at a desk, and requires little standing. While the wounds on his feet have healed, a thick callous forms on the sole of his left foot. The callous is painful when standing or walking and must be trimmed periodically. Deville wears a special insert in his shoe to minimize the pressure. He is unable to participate in many of his former pastimes, such as dancing and hunting. Under the circumstances, we find the award for pain and suffering to be within the discretion of the jury.
The jury awarded $20,000 in past, present and future medical expenses. It was stipulated before trial that Deville had past medical expenses of $2,388.41. Further, there was testimony that Deville might have to undergo corrective surgery if his foot continues to cause problems. Taking this into consideration, we believe that an award of $20,000 is a reasonable compensation for past, present and future medical expenses.
Before the accident, Deville was working about 60 hours a week as a welder and welder's helper for $7.50 per hour, plus time and a half for overtime. In the two jobs in succession he took upon returning to work, he earned $6.70 per hour with no overtime. His current job with SLEMCO pays $8.35 per hour. There was testimony that if his condition allowed him to work as a welder today, Deville could expect to earn $9.60 per hour. In addition, Deville lost a total of 15 weeks as a result of the accident.
*901 Consequently, we cannot say that an award of $11,550 for past and future lost wages is excessive.
Finding no abuse of discretion on the part of the trier of fact, we affirm the damage award. For the above and foregoing reasons, the jury's verdict is affirmed. The costs of this appeal are assessed against the defendant.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
ALFRED A. MANSOUR, J. Ad Hoc, dissents for the reasons assigned by GUIDRY, J.
GUIDRY, Judge, dissenting.
This court's affirmation of the jury's determination that Curtis Soileau was negligent is tenuous at best. Although, Curtis Soileau originally erected the CB antenna on his premises as a gift to his son and was aware that his son was negotiating a sale for the antenna, he was never told when the antenna was to be removed, nor was he aware of the plan for lowering it devised by his son and plaintiff, Mitchell Deville. Further, the presence of this antenna in proximity to the uninsulated power line was apparent and plaintiff admitted his awareness thereof prior to dismantling the antenna. A landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976). In my view, the circumstances of this case are indistinguishable from those present in Jones v. Aetna Casualty and Surety Company, et al., 430 So.2d 1134 (La.App. 1st Cir.1983), writ denied, 438 So.2d 573 (La. 1983), where the landowner was absolved of all responsibility. Further, in my view, my brethren of the majority seriously err in concluding that the record supports a finding that the insurer acknowledged Deville's rights such as to interrupt prescription. The record reflects that the insured's adjuster, Mr. Tassin, met with Deville on several occasions, the first meeting occurring about six months post accident. Deville described this meeting as follows:
"He came to talk about my medical bills and stuff and said that whenever we get all the medical bills in and stuff we'd settle. You know, he'd try to help me out the best way he can."
Thereafter, Tassin and plaintiff met on two occasions and discussed only payment of the medical bills. On April 9, 1983, four days before the tolling of prescription, Tassin met with Deville and offered to settle for the sum of $12,000.00. The offer was refused by Deville. Tassin then indicated to Deville that the offer would remain viable if he wished to accept. Deville testified that on April 11, 1983 he determined to accept the offer and attempted to contact Tassin but to no avail. In this connection, Deville testified as follows:
"Q. And you didn't go to the Farm Bureau office, or to any other Farm Bureau person or agent on April theon that Tuesday did you?
A. No Sir.
Q. You could have gone if you wanted to, couldn't you have?
A. Yes sir.
Q. But it was your decision not to go?
A. Yes sir."
On Wednesday, April 13, 1983, Deville notified Farm Bureau that he would accept its offer of settlement. Farm Bureau refused payment on the ground that prescription had run and this suit was instituted some five months later. The circumstances present do not support the conclusion that Farm Bureau acknowledged Deville's rights such as to interrupt prescription. Plaintiff was not lulled into inaction by any words or conduct on the part of Farm Bureau. To the contrary, the record clearly reflects that Deville was fully cognizant of the fact that suit had to be filed within one year of the date of accident and, in fact, had contacted an attorney shortly before his last visit with Tassin. In my opinion, the contacts between Tassin and Deville were only good faith settlement negotiations *902 which are not sufficient to interrupt the course of prescription. As stated in Trainer v. Aycock Welding Company, et al., 421 So.2d 416 (La.App. 1st Cir.1982):
"Prescription of an unliquidated claim for damages in tort may be interrupted by the tacit acknowledgment of the debtor. Flowers v. United States Fidelity & Guaranty Company, 381 So.2d 378 (La. 1979); Richardson v. Louisiana Farm Bureau Mutual Insurance Company, 393 So.2d 200 (La.App. 1st Cir.1980), writ denied 398 So.2d 529 (La.1981). In the Flowers case, the court determined that the adjuster's discussions with the claimant to try to reach a compromise `did not manifest an intention to admit the company's indebtedness to her.' Flowers v. United States Fidelity & Guaranty Company, supra, 381 and 384. In the Richardson case, there was an oral compromise agreement to settle the plaintiff's claim and this court found that there was a tacit acknowledgment of the debt which interrupted prescription.
It has long been the public policy of this state that the compromise of disputes are highly favored and promote judicial efficiency. La.C.C. art. 3071 et seq.; Richard v. Southern Farm Bureau Casualty Insurance Company, 254 La. 429, 223 So.2d 858 (1969); Saunders v. New Orleans Public Service, Incorporated, 387 So.2d 603 (La.App. 4th Cir.1980), writ denied 394 So.2d 614 (La. 1980); McKowen v. Gulf States Utilities Company, 358 So.2d 675 (La.App. 1st Cir.1978); Louisiana Farm Bureau Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company, 348 So.2d 1311 (La.App. 3rd Cir. 1977). Candid and good faith settlement negotiations should be encouraged between the parties to a dispute to implement this policy. If settlement negotiations which do not result in an oral compromise agreement can constitute an acknowledgment of the disputed indebtedness so as to interrupt prescription, then undoubtedly in the future such negotiations will be less candid and less productive. We do not believe that the law should be interpreted to place such a chilling effect on settlement negotiations. The ruling of the trial court that the negotiations between the parties did not result in an acknowledgment is correct."
For these reasons, I respectfully dissent.
NOTES
[*] Judge Alfred A. Mansour of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.
[1] This article was repealed in 1983 by Acts 1982, No. 187 § 1, eff. Jan. 1, 1983, and replaced by La.C.C. art. 3464 which provides that:

"Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."
The law in this area is unchanged.